## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                      No. CR 05-0469 JB

EDUARDO HERNANDEZ-MEJIA
and RAMON ANAYA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Joint Motion in Limine Regarding the Testimony of Special Agent Joe Mata and Special Agent Deborah L. Michaels, filed October 11, 2006 (Doc. 325)("Motion to Exclude"). The Court held an evidentiary hearing on this motion on November 21, 2006. The primary issue is whether, at the trial in this case, the Court should permit testimony from two case agents that is based partially on knowledge the agents gained from testimonial statements that others made. Because the Court believes that at least some of the agents' testimony may be based on testimonial hearsay, and thus implicates the Sixth Amendment's Confrontation Clause, the Court will grant the motion in part. Because the Court is also convinced, however, that the agents will be able to testify regarding some subjects without relying upon testimonial hearsay, the Court will deny the motion in part.

## FACTUAL BACKGROUND

On October 12, 2005, a federal grand jury returned a superseding indictment charging Defendants Eduardo Hernandez-Mejia and Ramon Anaya, among others, with numerous drug trafficking offenses and with conspiracy to commit drug trafficking offenses. See Superseding

Indictment, filed October 12, 2005 (Doc. 153).  On August 21, 2006, the United States filed a notice

that it intended to offer expert testimony at the trial of this case.  <u>See</u> United States' Amended Notice

to Offer Expert Testimony, filed August 21, 2006 (Doc. 304)("United States' Notice").  Among the

witnesses the United States included in its Notice were the co-case agents in this case: Drug

Enforcement Administration ("DEA") Special Agent Joe Mata and Federal Bureau of Investigation

("FBI") Special Agent Deborah Michaels.

1.       **<u>Special Agent Mata.</u>**

The DEA has employed Mata since March 2003; his duties as a Special Agent  include

undercover work, use of confidential sources, wiretap and intercepted communications analysis,

criminal surveillance, and courtroom testimony.  <u>See</u> United States' Notice at 2; Transcript of

Hearing at 35:1-5 (Mata)(taken November 21, 2006)("Transcript").[1]  Before becoming a Special

Agent, Mata worked for approximately two years as a task force officer at the DEA office in Fort

Worth, Texas.  <u>See</u> Transcript at 36:24-37:1.  In that position, Mata worked extensively as an

undercover officer in investigations of high-level narcotics trafficking organizations. <u>See id.</u> at 37:1-

2 (Mata).  Mata attended the DEA training school, and received instruction in drug production, sales,

and distribution.  <u>See</u> United States' Notice at 2.  In his role as a DEA Special Agent, Mata has

testified as an expert in federal court and, specifically, has testified regarding drug valuation.  <u>See</u>

Transcript at 35:14-22 (Mata).

Before joining the DEA, Mata worked as a police officer for the City of Arlington, Texas for

approximately six and one-half years.  <u>See</u> United States' Notice at 2-3; Transcript of Hearing at

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

35:11-12 (Mata).  During the last three years of his tenure as an Arlington Police Officer, Mata

served as a narcotics investigator, working heavily in undercover operations.  See United States'

Notice at 3; Transcript of Hearing at 35:11-12; 36:4-6 (Mata).

Mata estimates that, during his career as a law enforcement officer, he has been personally

involved in approximately one thousand undercover narcotics transactions, including transactions

involving heroin and cocaine.  See Transcript at 36:9-10; 37:13-17 (Mata).  Mata also estimates that,

before joining the DEA, he was involved in approximately 300 debriefings during his law

enforcement career, and that some of these debriefings were related to investigations of heroin and

cocaine trafficking.  See id. at 38:20-25 (Mata).

The United States represents that it intends to solicit Mata's testimony regarding his

interpretation of intercepted telephone conversations and his understanding of certain code words

that the alleged co-conspirators involved in this case used during those conversations.  See United

States' Notice at 2.  The United States also indicates that Mata will testify that the quantity of

narcotics involved in this case is a distributable amount and will quantify the monetary value of the

narcotics the United States seized.  See id.  Finally, the United States expects that Mata will offer

testimony regarding the various roles of individuals in a narcotics trafficking organization and a

general business overview of a narcotics trafficking operation.  See id.

**2.   Special Agent Michaels.**

Michaels has been an FBI employee since 1996 and a Special Agent focused on drug

investigations since 2003.  See id. at 3.  Michaels is involved in conducting and assisting in

investigations of intrastate, interstate, and international narcotics trafficking operations.  See id. at

3-4.  Before becoming a Special Agent, Michaels was employed as an Intelligence Research

Specialist; in that position her duties included analysis of raw data and information obtained from wiretaps.  See id. at 3.  Michaels has received specialized training in drug production, sales, and distribution.  See id.

Michaels has experience interviewing defendants, cooperating individuals, and other witnesses involved in narcotics trafficking.  See id. at 4.  During her law enforcement career, Michaels has participated in more than twenty debriefing sessions and worked on undercover operations.  See id.  Michaels has previously testified in federal court.  See id.  The United States represents that Michaels will testify regarding her interpretation of intercepted telephone conversations, including the meanings of certain code words.  See id. at 3.

## PROCEDURAL BACKGROUND

The Unites States seeks to introduce the testimony of Mata and Michaels under rules 702 and 703 of the Federal Rules of Evidence.  See United States' Notice at 1.  The United States indicates that it does not believe all of Mata's and Michaels' testimony is subject to analysis under the rules for expert testimony, but disclosed the subject matter of all the agents' testimony out of an abundance of caution.  See United States' Response to Defendants' Joint Motion In Limine Regarding the Testimony of Special Agent Joe Mata and Special Agent Deborah L. Michaels filed October 11, 2006 ¶ 3, at 2, filed November 3, 2006 (Doc. 339)("United States' Response").  In response to the United States' Notice, Hernandez-Mejia and Anaya move the Court in limine for an order barring the testimony of Mata and Michaels.[2]

The Defendants written motion in limine objects to the United States' proffered testimony

---

[2]Defendant Jose Michael Montoya originally joined in this motion, but has subsequently entered into a plea agreement with the United States.  See Sealed Plea Agreement, filed October 11, 2006 (Doc. 322).

on the grounds that the testimony violates the Confrontation Clause and that Mata and Michaels are

not qualified to offer expert opinion testimony on drug organizations under rule 702 of the Federal

Rules of Evidence.  At the November 21, 2006 evidentiary hearing on this motion, however, the

Court and the parties focused on whether the agents' testimony violated the Confrontation Clause,

rather than on the agents' qualifications.  Although the Court suggested that some of the issues in

contention might require a <u>Daubert</u> hearing, <u>see</u> Transcript at 6:18-19 (Court), the Defendants

confined their argument at the evidentiary hearing to their contention that the Confrontation Clause

barred the testimony to which they object, <u>see</u> id. at 57:22-24 (Davidson)(noting that the Defendants

may wish to contest issues under <u>Daubert</u> "at a later juncture" and suggesting that "maybe [the

Defendants will] address that issue later on").

At the hearing, after oral argument on the merits of the motion, the United States called Mata

to testify regarding the content of his testimony and the basis of the opinions he expected to offer at

trial.  Michaels did not testify at the hearing.

## RULE 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts
> or data, (2) the testimony is the product of reliable principles and methods, and (3)
> the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Thus, rule 702 requires the trial court "determine whether the expert is proposing

to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact

to understand or determine a fact in issue."  <u>United States v. Muldrow</u>, 19 F.3d 1332, 1337 (10th Cir.

1994).   The proponent of expert testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.  See Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d 1252, 1266 (D.N.M. 2005)(Browning, J.)(citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).  Once the trial court has determined that expert testimony would be helpful to the trier of fact, a witness "may qualify as an expert by 'knowledge, skill, experience, training, or education' and . . . the 'expert' . . . should not be required to satisfy an overly narrow test of his own qualifications."  Gardner v. Gen. Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974). Expert testimony is liberally admissible under the Federal Rules of Evidence, see United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995)(describing rule 702 as a "liberal standard"), and the trial court has broad discretion in deciding whether to admit or exclude expert testimony, see Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647 (10th Cir. 1991)(noting the trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

## RULE 703

Rule 703 provides that, if the facts or data upon which an expert bases his opinion are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."  Fed. R. Evid. 703.  See TK-7 Corp. v. Estate of Barbouti, 993 F.2d 722, 732 (10th Cir. 1993)(noting that Rule 703 permits experts to rely on inadmissible hearsay in forming their opinions).  Rule 703 "is designed to broaden the basis for expert opinions . . . and to bring judicial practice into line with the practice of the experts themselves when not in court."  Fed. R. Evid. 703 advisory committee's note.  Nevertheless, while rule 703 allows an expert witness to premise his opinion on inadmissible evidence, the court must be cautious to ensure that a party is not

using expert testimony as a vehicle to introduce otherwise inadmissible evidence.  See TK-7 Corp.
v. Estate of Barbouti, 993 F.2d at 732-33 (citing In re James Wilson Assocs., 965 F.2d 160, 173 (7th
Cir. 1992)).

## LAW REGARDING DRUG ORGANIZATION TESTIMONY

The United States Court of Appeals for the Tenth Circuit "has repeatedly held that in
narcotics cases, expert testimony [by a law enforcement officer] can assist the jury in understanding
transactions and terminology."  United States v. Walker, 179 Fed. Appx. 503, 507 (10th Cir.
2006)(quoting United States v. Quintana, 70 F.3d 1167, 1171 (10th Cir. 1995)).  This rule is based
on the Tenth Circuit's recognition that the modus operandi of drug organizations, the value of drug
quantities, the language of narcotics dealers, and the tools of the narcotics trade "are not subjects
with which most jurors are familiar."  United States v. McDonald, 933 F.2d 1519, 1522 (10th Cir.
1991).   Other Circuit Courts of Appeal are in accord.  See United States v. Martinez, 476 F.3d 961,
967 (D.C. Cir. 2007)("Expert testimony about the methods of drug organizations is common in drug
cases."); United States v. Robles-Rosas, 27 Fed. Appx. 897, 899 (9th Cir. 2001)(holding that district
court did not abuse its discretion in permitting testimony regarding the modus operandi of drug
organizations); United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994)("[T]estimony on the
modus operandi of criminals 'is commonly admitted,' particularly regarding the methods of drug
dealers.")(quoting United States v. Chin, 981 F.2d 1275, 1279 (D.C. Cir. 1992)(Ginsburg, J.)).  More
specifically, in cases involving possession with intent to distribute, the Tenth Circuit has held that
"testimony with regard to the significance of a quantity of drugs possessed is specialized knowledge
that assists the jury in understanding a fact at issue."  United States v. Mundy, 97 Fed. Appx. 844,
846 (10th Cir. 2004).

## LAW REGARDING CRAWFORD V. WASHINGTON

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court of the United States held that, consistent with the Sixth Amendment, "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Id. at 59.

In Crawford v. Washington, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" Id. at 68. The Supreme Court indicated, however, that the term applied "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. The Supreme Court explained that, "even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class." Id. at 53.

A critical element in determining whether a statement made to law enforcement officers is testimonial or non-testimonial "centers on the reasonable expectations of the declarant." United States v. Summers, 414 F.3d 1287, 1302 (10th Cir. 2005).

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis v. Washington, 126 S. Ct. 2266, 2273-74 (2006). Consistent with this standard, the Tenth Circuit has held that "a statement is testimonial if a reasonable person in the position of the declarant

would objectively foresee that his statement might be used in the investigation or prosecution of a crime." United States v. Townley, 472 F.3d 1267, 1272 (10th Cir. 2007)(quoting United States v. Summers, 414 F.3d at 1302).  Other Circuit Courts of Appeal are in accord.  See United States v. Townley, 472 F.3d at 1272 (citing United States v. Hinton, 423 F.3d 355, 360 (3d Cir. 2005); United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004); United States v. Saget, 377 F.3d 223, 229 (2d Cir. 2004)).

## ANALYSIS

The Defendants argue that the testimony of Mata and Michaels is inadmissible for two reasons.  First, the Defendants contend that the admission of the testimony would violate the Confrontation Clause because Mata's and Michaels' opinions are premised on the testimonial statements of persons who are not subject to cross-examination.  Second, the Defendants maintain that, even if the statements are not inadmissible under Crawford v. Washington, the Court should still exclude them, because Mata and Michaels are not qualified to offer expert testimony regarding the operations of narcotics trafficking organizations.

The Court believes that, based on their training and professional experience, Mata and Michaels are qualified to offer opinion testimony regarding the operations of narcotics trafficking organizations.  Nevertheless, because the Court believes that at least some of the agents' testimony may implicate the Confrontation Clause, the Court will preclude Mata and Michaels from offering opinions based on testimonial hearsay.  Mata and Michaels may testify, however, as to their personal knowledge and may offer expert opinions regarding the operations of narcotics organizations to the extent those opinions are based on their training, professional experiences, and other permissible sources.

# I.   MATA AND MICHAELS ARE QUALIFIED TO OFFER EXPERT TESTIMONY REGARDING THE OPERATIONS OF NARCOTICS TRAFFICKING ORGANIZATIONS.

The Defendants contend that neither Mata nor Michaels is qualified to offer an opinion on the operations of narcotics trafficking organizations, because neither has personally run a large, underground drug organization or earned advanced degrees in economics or some related field that would qualify them to provide the jury with opinion testimony on the management or structure of such organizations.  See Motion to Exclude at 10-11.  The Defendants argue that the agents' jobs are to "ferret out crime," and do not qualify them as experts.  Id. at 11.  The Defendants maintain that Mata's and Michaels' opinions are not based on reliable methodology and characterize the agents as "essentially fact witnesses who will be offering their opinions to bolster the government's theory of the case."  Id. at 12.

Once the trial court has determined that expert testimony would be helpful to the trier of fact, a witness "may qualify as an expert by 'knowledge, skill, experience, training, or education' and . . . the 'expert' . . . should not be required to satisfy an overly narrow test of his own qualifications." Gardner v. Gen. Motors Corp., 507 F.2d at 528.  The Tenth Circuit has indicated that the modus operandi of drug organizations, the value of drug quantities, the language of narcotics dealers, and the tools of the narcotics trade "are not subjects with which most jurors are familiar," see United States v. McDonald, 993 F.2d at 1522, and that, more specifically, "testimony with regard to the significance of a quantity of drugs possessed is specialized knowledge that assists the jury in understanding a fact at issue," United States v. Mundy, 97 Fed. Appx. at 846.

The Court believes that, because of the covert and unique nature of narcotics trafficking, the testimony of Mata and Michaels will assist the jury to understand the evidence presented at trial.  See

United States v. Walker, 179 Fed. Appx. at 507 (recognizing that the Tenth Circuit "has repeatedly held that in narcotics cases, expert testimony [by a law enforcement officer] can assist the jury in understanding transactions and terminology"). The Court also believes that both Mata and Michaels qualify as expert witnesses under rule 702's "liberal standard." United States v. Gomez, 67 F.3d at 1526.

Mata has received instruction in drug production, sales, and distribution. He has been employed with the DEA since March 2003, and has extensive experience investigating narcotics trafficking organizations and participating in undercover operations. Before joining the DEA, Mata worked as police officer for six and one-half years, including three years as a narcotics investigator, working heavily in undercover operations. Mata estimates that he has been involved in approximately one thousand undercover narcotics transactions, and hundreds of debriefings related to investigations of heroin and cocaine trafficking. Mata has testified in federal court as an expert on narcotics organizations in the past and has specifically testified regarding drug valuation.

Michaels has also received training in drug production, sales, and distribution. She has been employed with the FBI since 1996 and has been focused on narcotics trafficking investigations since 2003. Michaels has experience analyzing data and information obtained from wiretaps, and has participated in the debriefing of suspects and undercover operations. Michaels has previously been qualified to testify in federal court.

Expert testimony is liberally admissible under the Federal Rules of Evidence. See United States v. Gomez, 67 F.3d at 1526. The Court believes that, based on their training and professional experience, Mata and Michaels are qualified to offer opinion testimony regarding the operations of narcotics trafficking organizations. To the extent that the agents' opinions are based on permissible

sources, the Court will admit the testimony.

## II.   MATA AND MICHAELS MAY OFFER EXPERT OPINIONS REGARDING THE OPERATIONS OF NARCOTICS ORGANIZATIONS TO THE EXTENT THOSE OPINIONS ARE BASED ON THEIR TRAINING, PROFESSIONAL EXPERIENCES, AND OTHER PERMISSIBLE SOURCES.

The Defendants have identified three primary categories of proffered testimony that they maintain implicate the Confrontation Clause: (i) the agents' interpretation of intercepted telephone conversations and their understanding of certain code words that the alleged co-conspirators involved in this case used during those conversations; (ii) Mata's testimony regarding whether the amount of narcotics seized was a distributable amount and his opinion of the monetary value of the quantities seized; and (iii) Mata's testimony regarding the duties of different individuals involved in the narcotics trafficking scheme and outlining a general overview of the business operations of a narcotics trafficking organization.  Because the Court believes that some of the agents' testimony implicates the Sixth Amendment, and because Mata admitted that some of his opinions would be based on testimonial hearsay, the Court will preclude the agents from offering their opinions based on such hearsay.  Mata and Michaels may testify, however, as to their personal knowledge and may offer expert opinions regarding the operations of narcotics organizations to the extent those opinions are based on their training, professional experiences, and other permissible sources.

### A.   THE AGENT'S PROFFERED TESTIMONY REGARDING INTERPRETATION OF INTERCEPTED CONVERSATIONS AND THE MEANING OF CODE WORDS IS PERMISSIBLE.

The Defendants assert that the agents' interpretation of intercepted conversations and understanding of code words is based on debriefings of suspects and on co-conspirators' confessions. See Transcript at 9:21-22 (Davidson).  The Defendants contend that the interpretations are therefore

based on testimonial hearsay and that <u>Crawford v. Washington</u> bars their admission  <u>See</u> Motion to Exclude at 5.

The United States has not argued, either in its written response or at the evidentiary hearing, that statements witnesses may have made during a debriefing or formal police investigatory interrogation,[3] suspects' post-arrest statements, or co-Defendants' confessions are not testimonial for the purposes of the Court's analysis under <u>Crawford v. Washington</u>.  The Court believes that, in making these types of statements to federal agents, a reasonable person would understand that "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  <u>Davis v. Washington</u>, 126 S. Ct. at 2274.  For the purposes of resolving this motion, the Court will assume that statements made in response to debriefing or formal police investigatory interrogation, suspects' post-arrest statements, and/or co-Defendants' confessions are testimonial, because "a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution" of the individuals associated with the narcotics trafficking organization that is the subject of this case.  <u>See</u> <u>United States v. Summers</u>, 414 F.3d at 1302.

The United States counters that the agents' testimony regarding the meaning of code words is not premised on testimonial statements, but is based on the agents' deductions from their participation in at least four undercover transactions and from surveillance activities, and that testimony of a cooperating informant will corroborate the agents' opinions.  <u>See</u> Transcript at 10:25-12:10 (Martinez).  At the hearing on this motion, the United States' counsel emphasized that this

---

[3]Mata testified that he considers "debriefing" equivalent to taking the post-arrest statement of an individual.  <u>See</u> Transcript at 64:12-16 (Mata).

cooperating witness will be subject to cross-examination.  See id. at 12:9-11 (Martinez).

Although Michaels did not testify at the evidentiary hearing, and Mata did not testify concerning the basis of his knowledge of the meaning of code words, the United States' counsel asserted that the agents would not rely on testimonial statements in offering opinions about the meaning of these words.  See id. at 17:16-18 (Martinez).  The Defendants acknowledge that the agents' testimony may be based upon their personal knowledge of the Defendants' activities and co-conspirator statements intercepted as part of surveillance actions, but express concern to the extent that the agents' knowledge is based on testimonial statements that were made in association with another case, or on statements that Defendants in this case made if those statements were made in the context of a police interrogation and those defendants are not made available for cross-examination.  See Transcript at 15:8-13 (Davidson).   Nevertheless, in light of the Defendants' acknowledgment, and based on the United States' representation and understanding that the agents will base their opinions solely upon intercepted co-conspirator statements and evidence that will also be available to the jury, and not testimonial hearsay, the Court will not, pretrial, preclude Mata and Michaels from testifying regarding their interpretation of intercepted communications and the meaning of code words.   The Court instructs the United States, however, to confirm its representation again and confirm that both agents will rely, for their opinions, on intercepted co-conspirator statements and other evidence available to the jury, and not on testimonial statements of any person.

**B.     MATA MAY TESTIFY REGARDING THE MONETARY VALUATION OF THE NARCOTICS SEIZED AND OFFER HIS OPINION THAT THE AMOUNT SEIZED WAS A DISTRIBUTABLE QUANTITY.**

The United States attests that Mata has been able to determine the value of narcotics from

his experience as a law enforcement officer in the community and from his participation in undercover transactions. See id. at 25:11-14. The Defendants acknowledge that, if Mata's testimony regarding the value of the narcotics seized in this case is based on his own personal experience of dealing with distributable amounts of cocaine and heroine, the testimony is likely appropriate. See id. at 21:8-11 (Davidson). The Defendants contend, however, that in arriving at the value of the narcotics seized in this case, Mata likely relied on debriefings and law enforcement interrogations, and perhaps considered plea colloquies and the statements of other agents -- all testimonial statements whose admission violates the Confrontation Clause. See id. at 21:13-18 (Davidson). The Defendants admit that prohibiting expert testimony on this basis narrows the scope of expert testimony traditionally admissible under federal caselaw interpreting rules 702 and 703, but contend that the Supreme Court's decision in Crawford v. Washington necessarily changed that law. See Transcript at 23:5-10 (Davidson).

The Defendants cite to the United States Court of Appeals for the Eleventh Circuit's decision in United States v. Buonsignore, 131 Fed. Appx. 252 (11th Cir. 2005), as a case that reflects this change in the understanding of the law. In United States v. Buonsignore, the Eleventh Circuit concluded that the admission of a law enforcement agent's testimony regarding drug valuation violated the Confrontation Clause, because the valuation was not based on the agents' own experience and observations, but on information obtained from an unidentified individual at the DEA in Washington, D.C. See id. at 257. The Eleventh Circuit noted that the agents' testimony violated the Confrontation Clause, because the United States had not presented evidence that the DEA official upon whose statements the testifying agent premised his valuation conclusion was unavailable and that the defendant had the opportunity to cross-examine the official. See id.

The Court believes that United States v. Buonsignore is distinguishable from the Defendants' case.  Unlike the testifying agent in United States v. Buonsignore, at the evidentiary hearing on this motion, Mata testified that his knowledge of drug valuations was not based merely on debriefings or statements he received from others, but also on his personal involvement in undercover operations.  See id. at 46:14-17 (Mata).  Mata represents that, during his career as a law enforcement officer, he has been personally involved in approximately one thousand undercover narcotics transactions, including transactions involving heroin and cocaine.  See id. at 36:9-10; 37:13-17 (Mata).  Moreover, the Court notes that the Eleventh Circuit has distinguished United States v. Buonsignore from cases in which the testifying agent may have knowledge based on testimonial statements, but also on the agent's education, training, knowledge, and personal experience.  See United States v. Springer, 165 Fed. Appx. 709, 716 (11th Cir. 2006).

The Court acknowledges that expert opinion testimony based on testimonial statements may implicate the Confrontation Clause.  Nevertheless, the Court is reluctant to exclude expert testimony based on permissible sources merely because the witness has been exposed to testimonial hearsay.  Mata informed the Court that he could formulate an opinion regarding the value of drug quantities independent of information received through testimonial statements, see id. at 50:21-25 (Mata), and represented that he could separate in his mind valuation information he obtained from testimonial statements from that he obtained through his undercover activities, see id. at 53:19-24 (Mata).  Based on these representations, the Court will permit Mata to testify as to his opinions regarding whether the amount of narcotics seized in this case is a distributable amount and the monetary value of that amount, so long as he does not rely upon any testimonial statements in offering his expert testimony.

**C.    MATA MAY NOT TESTIFY REGARDING FACTUAL MATTERS FOR WHICH HIS KNOWLEDGE IS BASED UPON TESTIMONIAL HEARSAY.**

The United States has identified a number of different sources for Mata's knowledge regarding the operations of drug trafficking organizations.  Mata has received DEA training in drug production, sales, and distribution.  <u>See</u> United States' Notice at 2.  Mata's experience in narcotics related law enforcement work includes participation in undercover work, use of confidential sources, wiretap and intercepted communications analysis, and criminal surveillance.  <u>See id.</u>  Mata testified that, as the result of his formal training and his job experience, he has become knowledgeable regarding the operations of drug organizations.  <u>See</u> Transcript at 62:2-7 (Mata).

Mata also has information specific to this case.  Mata was the co-case agent in charge of the investigation in this case.  <u>See id.</u> at 65:10-11.  He performed surveillance on the organization that is the subject of this case.  <u>See id.</u> at 65:8-9.  He listened to intercepted communications between the members of the organization and reviewed transcripts of those communications.  <u>See id.</u> at 65:12-13; 71:16-23 (Mata).  Mata worked with a cooperating confidential informant and personally took part in undercover drug transactions with alleged co-conspirators.  <u>See id.</u> at 69:6-13 (Mata).

At the evidentiary hearing on this motion, Mata also acknowledged, however, that part of his knowledge about this case was based on debriefing individuals involved in the trafficking scheme, post-arrest statements, and confessions of co-Defendants.  <u>See id.</u> at 77:13-17 (Mata).  Mata admitted that, in testifying regarding his opinions about the roles of specific individuals within the specific drug organization that is the subject of this case, he would rely in part upon these statements.  <u>See id.</u> at 78:22-79:10.  After the parties questioned Mata at the hearing, the Court questioned Mata to clarify what the nature of his reliance on testimonial statements would be:

| | |
|---|---|
| COURT: | Would you be able to offer the testimony that the United States wants to solicit in this case without reference to any -- without any portion of the debriefings or the post-Miranda statements by Defendants being a basis for your opinion, or would that be impossible for you to put that aside and offer your opinions here? |
| MATA: | I believe my testimony may partially involve some of that as far as my experience with debriefing, you know, excuse me, defendants in the case or -- |
| COURT: | Defendants in this case? |
| MATA: | Yes, or confidential sources.  But in addition to that -- |
| COURT: | In this case? |
| MATA: | Yes. |
| COURT: | How about in other cases?  Are you going to be relying in any way upon debriefings and post-Miranda statements in other cases for purposes of testifying about the role of people in this organization? |
| MATA: | I believe I can rely on that as far as assisting my expertise as a narcotics investigator. |
| COURT: | All right.  Let me see if I can ask the question again.  Are you going to be relying upon debriefings and talking with post-Miranda defendants and individuals in other cases for your opinions about the roles of the individuals in this case? |
| MATA: | Yes, that will probably come up, yes. |
| COURT: | All right.  And your testimony about the role of the individuals in this case is coming in part from your debriefing of the Defendants in this case, . . . the [Defendants] that aren't remaining in this case as well as post-Miranda statements of those individuals?   Your opinion testimony is going to necessarily involve that? |
| MATA: | Part of it, Your Honor. |

See at 78:2-79:10.  The Court notes that, to the extent that Mata admits that his opinions about the

roles of specific individuals involved in this case are based on testimonial statements, the United

States has not made any showing that the individuals who made these statements are unavailable or that the Defendants have had the opportunity to cross-examine the declarants.

The Court does not doubt that Mata has gained a great deal of knowledge about this case and about the individuals involved in the narcotics organization that is the subject of this case from sources other than testimonial statements.  Nevertheless, when repeatedly asked, Mata could not assure the Court that, in expressing his opinions about the role of particular individuals in this case, he could do so without relying on testimonial statements.  The Court is concerned that opinion evidence based on these testimonial statements may be the evidence about which the Supreme Court in Crawford v. Washington was concerned.  An expert should not be a conduit for getting into evidence testimonial statements that Crawford v. Washington would otherwise prohibit.  Accordingly, the Court must be careful to prevent expert testimony from becoming a vehicle for the admission of evidence that would otherwise be inadmissible.

Mata testified that, based on his training and professional experience, he is knowledgeable about the normal structure and operations of a narcotics trafficking organization, i.e. methods of limiting liability, the tools of the trade, and that there are often runners, couriers, cutters, packagers, et al.  Mata also testified, however, that one source of his general knowledge is debriefings and post-arrest conversations he has had with suspects during his career as a narcotics officer.  See Transcript at 64:9-18 (Mata).  Neither the parties nor the Court, however, asked Mata if he could testify regarding the general structure and practices of narcotics organizations without relying on these statements.

The United States, as the proponent of Mata's testimony, bears the burden to prove that his testimony is admissible.  Although it did not ask the dispositive question for the purposes of this

motion, the United States questioned Mata extensively about the source of his general knowledge regarding narcotics trafficking organizations. In addition to citing his extensive history as a narcotics officer and a DEA agent, Mata testified that, to become a Special Agent, he received formal instruction on drug organizations. See id. at 62:2-4 (Mata). He testified that he has participated in approximately ten wiretap investigations since joining the DEA. See id. at 61:13-15 (Mata). He indicated that he participated in surveillance of other narcotics organizations, and that often, through surveillance, he was able to learn how the organization under surveillance works. See id. at 64:21-65:5 (Mata). Mata stated that he has personally been involved in approximately one thousand undercover narcotics transactions. See id. at 36:9-10 (Mata).

The Court believes that, because of the training that Mata has received and the length and breadth of his experience as a narcotics officer, the United States may be able to establish by a preponderance of evidence that Mata can testify regarding the general structure and operations of a narcotics trafficking organization without relying on testimonial statements as the basis for his opinions. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 n.10 (1993)(holding that the proponent of expert testimony must establish its admissibility by a preponderance of the evidence). If the United States can do so, the Court does not see how such testimony implicates the Confrontation Clause. Accordingly, the Court will not, at this stage, preclude Mata from testifying generally regarding the structure and operations of narcotics organizations. The United States will need to assure the Court, outside of the presence of the jury, that Mata can give this testimony without relying on testimonial statements before offering the opinion in the presence of the jury.

At the hearing on this motion, however, the Court expressly asked Mata, whether, with regard to the particular individuals and the specific narcotics trafficking organization involved in this case,

-20-

he could not express an opinion without relying, at least in part, on debriefing, post-arrest statements, police interrogations, and other testimonial statements.  Mata admitted that he could not. Consequently, the United States should not elicit such opinions.  The United States can not dress evidence in the veil of expert testimony to avoid restrictions that the Confrontation Clause imposes in a criminal trial.  To the extent that Mata's opinions fall within this latter category, the Court believes that the opinions are inadmissible, and will preclude his testimony from the trial.

**IT IS ORDERED** that the Defendants' Joint Motion in Limine Regarding the Testimony of Special Agent Joe Mata and Special Agent Deborah L. Michaels is granted in part and denied in part.  Mata's and Michaels' opinions concerning their interpretations of intercepted communications and the meaning of certain code words are inadmissible.  Mata's opinions regarding whether the amount of narcotics seized is a distributable amount and the monetary value of the seized amount are admissible.  Mata may testify regarding the general structure and operations of a narcotics trafficking organization if he provides assurances to the Court that he is not relying on testimonial statements for his testimony.  Mata may not offer opinion testimony, however, regarding the roles of the particular individuals or the organizational structure or operations of the specific narcotics trafficking organization that is the subject of this case.

_____
UNITED STATES DISTRICT JUDGE

-21-

*Counsel*:

Larry Gomez
  Acting United States Attorney
Damon P. Martinez
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Edward O. Bustamante
Keith R. Romero
Martin Lopez, III
Albuquerque,  New Mexico

      *Attorneys for the Defendant Eduardo Hernandez-Mejia*

M. Naomi Salazar
Serapio L. Jaramillo
Albuquerque,  New Mexico

      *Attorneys for the Defendant Ramon Anaya*