IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                  No. CR 05-0469 JB

EDUARDO HERNANDEZ-MEJIA,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum in Support of Variance, filed July 9, 2008 (Doc. 476).  The Court held sentencing hearings on June 25, 2008, July 24, 2008, and December 1, 2008.  The Court has previously considered Defendant Eduardo Hernandez-Mejia's objections to his advisory guidelines sentence.  See Memorandum Opinion and Order, entered November 19, 2008 (Doc. 494)("MOO").  The primary remaining issue is whether the Court should vary from the resulting advisory guideline sentence for Hernandez-Mejia.  For the reasons stated at the hearing, and for further reasons consistent with those already stated, the Court will grant in part his request for variance, but will not vary as much as he requests.

## FACTUAL BACKGROUND

Hernandez-Mejia came to the United States in 1977 and gained permanent resident status in 1988.  Although he was arrested in 1987 and 1988 on drug-related charges, he lived in the United States for twenty-three years before obtaining any criminal convictions.  In 2000, Hernandez-Mejia was convicted in Phoenix, Arizona, of misdemeanors for assault and criminal damage.  He was also convicted in 2000 of Felony Possession of Drug Paraphernalia, an offense that is classified as a misdemeanor in New Mexico.  See N.M.S.A. § 30-31-25.1(C).  These convictions in 2000 constitute

the entirety of his criminal history.  Hernandez-Mejia has no violent prior felony convictions.

Hernandez-Mejia is now forty-nine years old.  Although he has never been married, he is the father of five children from various relationships and has been a legal permanent resident of the United States since 1988.  Before his arrest on these federal charges, Hernandez-Mejia maintained contact with his children, all but one of whom reside in the United States.

Hernandez-Mejia's federal offenses in this case all stem from his participation in a drug-trafficking ring based out of Los Lunas, New Mexico.  The organization was exposed principally because of an extensive wiretap investigation that the Drug Enforcement Administration conducted. Hernandez-Mejia played a major role in the conspiracy, selling narcotics to numerous co-conspirators and wiring money to suppliers in Mexico.  The record before the Court, however, does not show that Hernandez-Mejia was involved in dictating the activities of the organization, or in telling his buyers to whom to sell and for how much to sell the drugs.  He seems to have been a wholesale supplier of heroin and cocaine to various other drug dealers who were loosely associated with him because he was their principal supplier.  Many features about the conspiracy, and particularly about its decision-making structure, remain unclear.  It is not clear for, example, whether Hernandez-Mejia exercised much control over those to whom he sold drugs.  Many of the drug transactions described at trial and in the Presentence Investigation Report ("PSR") involve various people calling up Hernandez-Mejia to buy drugs.

Hernandez-Mejia's conduct generally seemed reactive rather than proactive.  The evidence does not show extensive planning or control over others; it does not show what cut of the profits Hernandez-Mejia took.  While arguably he recruited Defendant Sergio Delgado, another co-conspirator, Randy Corral, brought Delgado to Hernandez-Mejia, and there is no indication that Hernandez-Mejia recruited anyone else to the conspiracy.  Neither the evidence at trial nor the

information in the PSR explains how Hernandez-Mejia received heroin from his suppliers in Mexico.  It is possible that the suppliers arranged for the transportation of heroin across the border and Hernandez-Mejia only received the heroin.  There is nothing indicating he had an organizational role in any smuggling.

While Hernandez-Mejia was the main figure in sending money to Mexico to pay for the heroin being smuggled into the United States, it is not clear how much of an organizational role he played in this aspect of the conspiracy.  The evidence points to Hernandez-Mejia principally acting alone to wire money back to Mexico for the drugs he was buying, rather than coordinating the activities of others or arranging financial transactions on behalf of others.

Hernandez-Mejia never used violence in carrying out his activities, and despite being an important member of the conspiracy there is no evidence about how much of the profit that the conspiracy's endeavors generated ended up in his hands, although he does not appear to have led an extravagant lifestyle.  In sum, the record before the Court establishes the importance of Hernandez-Mejia's place in the drug-trafficking conspiracy, but does not show that he played an important leadership role.  He may well have.  Even with an extensive investigation, it can be difficult for law enforcement to develop a full picture of the inner workings of any secretive criminal enterprise.  The Court cannot, however, base its sentencing decisions on conjecture or hints in the evidence.  The evidence the Court has establishes only that Hernandez-Mejia was an important figure in a major drug ring, but does not reveal that he played a significant organizational or leadership role in it.

## PROCEDURAL BACKGROUND

On October 12, 2005, a federal grand jury returned a ten-count Superseding Indictment charging Hernandez-Mejia with conspiring to distribute heroin and cocaine, distributing cocaine,

attempting to evade currency-reporting requirements, running an unlicensed money-transmitting operation, and using a telephone to facilitate the drug-distribution conspiracy.  See Superseding Indictment, filed October 12, 2005 (Doc. 153).  Counts 2 and 3 of the Superseding Indictment -- attempting to evade currency-reporting requirements and running an unlicensed money-transmitting operation -- were dismissed before trial on the United States' motion.  See Order, entered March 28, 2008 (Doc. 415).  Hernandez-Mejia exercised his right to trial, and was tried before a jury on the eight remaining counts in the Superseding Indictment. After a four-day trial, the jury found Hernandez-Mejia guilty on all the counts submitted to the jury, save for Count Seven, which the jury had been instructed not to address.  See Verdict, entered April 10, 2008 (Doc. 450).

The United States Probation Office ("USPO") disclosed the PSR on June 3, 2008.  The PSR that the USPO generated calculated an offense level of 38, a criminal history category of III, and an advisory guideline range of 292-365 months.  A later Addendum recommended an adjustment to the criminal history category from III to II, based on an over-representation of Hernandez-Mejia's criminal history in the original PSR, which would result in a guideline range of 262-327 months.

Hernandez-Mejia made a number of objections to the PSR.  The Court overruled most of Hernandez-Mejia's objections.  The Court overruled his objection to receiving an enhancement for possessing a weapon during a drug-trafficking crime and his objection to his criminal history.  The Court sustained in part Hernandez-Mejia's objection to receiving an enhancement for being an organizer or leader, but found that he had acted as a manager or supervisor.  See MOO at 15.  The advisory guideline range for Hernandez-Mejia is therefore 235-293 months, based on an offense level of 37 and a criminal history category of II.  See id. at 28.

Hernandez-Mejia moves the Court, pursuant to 18 U.S.C. § 3553(a), United States v. Booker, 543 U.S. 220 (2005), and the advisory United States Sentencing Guidelines, to vary from the

advisory guideline sentence and impose a reasonable sentence consistent with 18 U.S.C. § 3553(a). Hernandez-Mejia requests that the Court sentence him to 121 months and a period of unsupervised release, based on an offense level of 32 and a criminal history category of I.[1]  In a Second Addendum, disclosed July 22, 2008, responding to Hernandez-Mejia's request, the USPO takes the position that a sentence of 121 months is inappropriate.  The USPO notes that Hernandez-Mejia was considered the principal source of heroin in Albuquerque, New Mexico, and that other co-Defendants who received lesser sentences were convicted of fewer counts and promptly entered guilty pleas.

At the continuation of the sentencing hearing on December 1, 2008, Larry Gomez, on behalf of the United States, contended that Hernandez-Mejia was the leader of the conspiracy and should be sentenced within the guidelines range.  Edward Bustamante, Hernandez-Mejia's counsel, requested a 135-month sentence in light of the Court's rulings on the applicable guidelines range. Hernandez-Mejia spoke on his own behalf at sentencing and requested that the Court consider his time already spent in prison, and allow him to be released on bond pending an appeal.

**RELEVANT LAW REGARDING VARIANCES FROM THE
SENTENCING GUIDELINES**

After United States v. Booker, the guidelines are now advisory and are one of several factors set out in 18 U.S.C. § 3553(a).  Although appellate courts are allowed to assume that within-Guidelines sentences are reasonable, subject to rebuttal, see Gall v. United States, 128 S.Ct. 586, 597 (2007), the Supreme Court of the United States has recently made it clear that no presumption of reasonableness attaches at the district court level to the sentence the Guidelines suggest, see id. at

---

[1] In his briefing, Hernandez-Mejia uses the guidelines sentence that would have resulted if the Court had sustained all of his objections to the PSR.

596-97 (2007)(sentencing judge "may not presume that the Guidelines range is reasonable"); Rita

v. United States, 127 S.Ct. 2456, 2465 (2007)(same).

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than

necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  Section 3553(a) also directs sentencing courts to consider: (i) the

nature of the offense and the defendant's character; (ii) the available sentences; (iii) the Sentencing

Guidelines and policy statements that the Sentencing Commission has promulgated; (iv) a policy

favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to

provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

## ANALYSIS

While both the Guidelines and the § 3553(a) factors counsel that Hernandez-Mejia should

receive a long sentence of incarceration, the issue is how long.  The Court does not believe that the

sentence that Hernandez-Mejia requests -- a sentence that is barely above the mandatory minimum

of ten years -- is appropriate, but the Court also does not believe that a sentence within the

guidelines range is reasonable.  Accordingly, the Court will grant Hernandez-Mejia's request for a

variance, but will not vary as much as he requests.

## I.     THE COURT WILL NOT ADJUST THE GUIDELINES SENTENCE.

In his sentencing memorandum in support of a variance, Hernandez-Mejia suggests that the

Court should adjust his guidelines sentence. It may be that the language which Hernandez-Mejia uses in his argument is another way of asking for a variance, but he may also be asking for further changes to his guideline sentence or for a departure. To the extent that Hernandez-Mejia is asserting again his objections to the PSR's guideline range, the Court has already dealt with them in its November 19, 2008 Memorandum Opinion and Order. And to the extent that Hernandez-Mejia is seeking a downward departure, the Court does not see any factors that take him out of the heartland of defendants that appear in federal court. The Court will consider the arguments that Hernandez-Mejia advances for an adjustment in its analysis of the appropriateness of a variance.

## II.   THE FACTORS IN 18 U.S.C. § 3553(a) FAVOR A VARIANCE FROM THE GUIDELINES SENTENCE.

The factors set out in § 3553(a) support a variance from the guidelines sentence. The guidelines range produces too high of a sentence. On the other hand, the Court does not believe that the mandatory minimum is an appropriate sentence. Section 3553(a) sets forth seven factors that the Court must consider in crafting an appropriate sentence.[2] The application of these factors leads the Court to a sentence that varies from the range the Sentencing Guidelines suggest.

### A.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSES, AND THE HISTORY AND CHARACTERISTICS OF HERNANDEZ-MEJIA.

The first sentencing factor the Court must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Hernandez-

---

[2] Only six of the seven sentencing factors are of particular relevance in this case. The seventh factor, "the need to provide restitution to any victims of the offense," 18 U.S.C. 3553(a)(7), is not at issue. While the Court has discretion to impose restitution for harm to the community for drug-trafficking, see 18 U.S.C. § 3663(c)(1) (stating that "when sentencing a defendant convicted of an offense described in . . . the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863), in which there is no identifiable victim, the court may order that the defendant make restitution"), Hernandez-Mejia does not have the resources to make such restitution a reliable option.

Mejia contends that a 121-month sentence is reasonable given his personal characteristics and the offense currently before the Court. While the Court must be respectful of the judgment of the Sentencing Commission that Congress has established, the Court shares Hernandez-Mejia's concern about the severity of the sentence that the Guidelines propose for these drug crimes. The guidelines sentence is nearly twice as long as the mandatory minimum. On the other hand, while the Court does not believe that the nature and circumstances of this offense warrant such a harsh sentence, the Court does not believe that the § 3553(a) factors justify a variance as great as what Hernandez-Mejia proposes.

### 1.   The Nature and Circumstances of the Offense.

Hernandez-Mejia's federal offenses are serious offenses, particularly his conspiring to distribute large amounts of cocaine and heroin. Even this offense is, however, in a different category from other serious offenses. As a general matter, murder and child molestation are crimes that are more heinous than the sale of drugs. The Sentencing Guidelines set a base-offense level of 38 -- one higher than Hernandez-Mejia's final adjusted offense level -- for both second-degree murder, see U.S.S.G. § 2A1.2, and aggravated sexual abuse of a child, see id. § 2A3.1(a)(1).

At its heart, the crime of selling illegal drugs for profit is malum prohibitum as opposed to malum in se. The murderer and the sexual predators must be jailed for the most straightforward of reasons: the protection of society. With some exceptions, once the dealer and the drugs are separated, the person is no longer a threat to society. The drug dealer is often sent to prison for a more complex calculus of factors, including retribution.

The Court is concerned that a 235-month sentence is too severe of a sentence for the sale of the quantity of drugs in this case. The Court has carefully considered the sentences that it has given for homicides, kidnapping, sex crimes, and violent assaults, and few of its prior sentences compare

with this guidelines sentence.  While Hernandez-Mejia was a manager of this drug operation, he was not a leader or organizer.  There was also apparently no violence involved.

In sum, the nature and circumstances suggest a severe sentence, but not as long as nearly twenty years.  Accordingly, the nature and circumstances suggest a variance, but not as much as Hernandez-Mejia requests, given that the offense involves a substantial quantity of narcotics and Hernandez-Mejia's key role in the conpsiracy.  The Court must not vary so much that it undercuts the seriousness with which Congress and the Sentencing Commission treat his crime.

### 2.    The History and Characteristics of Hernandez-Mejia.

Hernandez-Mejia apparently lived in the United States without a conviction until 2000, when he was convicted of two offenses.  But he had arrests in 1987 and in 1988 that were drug related, suggesting that Hernandez-Mejia has been involved in the drug business for much of the time that he has been in the United States.  Moreover, the Court has already departed from a criminal history of III to II, to make certain that the guidelines sentence does not over-represent his criminal history.  Accordingly, the Court does not believe that Hernandez-Mejia's history and characteristics support a variance, but they also do not counsel against a variance.  For the most part, the advisory guidelines sentence, using a criminal history of II rather than III, fully reflects his past.

The 235-month guidelines sentence here is driven by the particulars of the offense, rather than by the characteristics of the offense or by Hernandez-Mejia's particular history.  The guidelines sentence is driven mostly, if not entirely, by the inevitably somewhat arbitrary conclusion that a particular criminal offense and a particular amount of drugs should raise his base offense from a mandatory minimum of ten years to a potential sentence of more than double the ten-year minimum sentence that Congress contemplated.  While Hernandez-Mejia's history and characteristics do not support a variance, the circumstances of the crime require a more refined analysis than the

guidelines sentence gives.

**B.   THE NEED FOR THE SENTENCE TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT, TO AFFORD ADEQUATE DETERRENCE, TO PROTECT THE PUBLIC, AND TO PROVIDE SERVICES TO THE DEFENDANT.**

The second factor that Congress has directed courts to weigh embraces six separate sub-factors -- the need for the sentence to: (i) "reflect the seriousness of the offense"; (ii) "promote respect for the law"; (iii) "provide just punishment for the offense"; (iv) "afford adequate deterrence to criminal conduct"; (v) "protect the public from further crimes of the defendant"; and (vi) "provide the defendant" with various services, such as training or medical care.  18 U.S.C. § 3553(a)(2). "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" these six distinct sub-factors.  Id. at 3553(a).

The Court believes that either a 121-month sentence or a 235-month sentence would reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence.  Even under the lowest sentence that the Court could impose, Hernandez-Mejia would be approaching the age of sixty when released from prison.  The Court therefore believes that any sentence it could impose would provide the public with reasonable protection against future crimes Hernandez-Mejia might commit.  The need to provide special services to Hernandez-Mejia is not an important factor here.  Because any sentence the Court might impose would accurately reflect these five interests, the parsimony clause weighs the scales in favor of a sentence near the mandatory minimum.  The question then is whether either a 121-month or a 235-month sentence, or something in between, would produce a just punishment.  The Court believes neither the mandatory minimum nor the guidelines sentence produces a just punishment.

Hernandez-Mejia contends that a sentence of 121 months adequately reflects the seriousness

-10-

of the offense.  The Court agrees.  Congress established 120 months as the mandatory minimum, and so by any standard, such a long period of incarceration will suggest that society deems this crime to be serious.  For similar reasons, a sentence of over ten years promotes respect for the law and affords adequate deterrence.  Thus, these factors counsel for a variance.

The Court also believes that a sentence of 235 months or more would be disproportionate to the offense and its particulars before the Court.  Hernandez-Mejia states that, upon completion of his ten-year sentence, his punishment will continue.  He will be deported and separated from his family, who will remain in the United States.  He understands that, upon deportation, he cannot return and that his life in the United States is over.  While that is true, the Court has concerns whether 121 months would provide just punishment for Hernandez-Mejia.  Hernandez-Mejia was involved a major drug conspiracy.  His role in the conspiracy was a major one, and stretched over a significant period of time, involving many different drug deals and a large amount of narcotics. Hernandez-Mejia's crimes are not limited to a single occurrence, but represent a continuing course of conduct.  While the parsimony clause, in conjunction with the other factors in U.S.S.G. § 3553(a)(2), counsels a sentence near the mandatory minimum, the need to impose just punishment strongly indicates that the Court should hand down a sentence greater than the 121 months that Hernandez-Mejia proposes.

### C.    AVAILABLE SENTENCES.

The third factor the Court must take into account is "the kinds of sentences available."  18 U.S.C. § 3553(a)(3).  Given the particulars of this case, the advisory guidelines sentence is unreasonable and is too harsh a sentence.  A sentence of 120 months is an available sentence that the Court can impose.  The mandatory minimum does not, however, satisfy all the factors set out in 18 U.S.C. § 3553(a).  The mandatory minimum is too lenient a sentence in this case.  The Court,

however, does not have to accept either a 120-month sentence or a 235-month sentence, but can fashion a sentence in between those two extremes that more faithfully reflects all of the relevant sentencing factors.

**D.    THE ADVISORY SENTENCING-GUIDELINES RANGE AND SENTENCING POLICY.**

The fourth and fifth factors for the Court to consider are the guidelines range the Sentencing Guidelines establish for Hernandez-Mejia and any pertinent policy statement the Sentencing Commission has issued.  See 18 U.S.C. § 3553(a)(4) & (5).  Hernandez-Mejia contends that an adjusted offense level of 32 and a sentence of 121 months is more in line with the goals, concerns, and policies reflected in 18 U.S.C. § 3553.  Culpability based on a single prior felony conviction does not adequately take into account the particulars of this offense, and conflicts with the goals, concerns, and policy statements set out in 18 U.S.C. § 3553(a).  The advisory guidelines sentence unduly emphasizes deterrence and retribution, while not giving enough weight to consideration of the individual circumstances of Hernandez-Mejia and his particular federal offense.

The Court also believes that the Guidelines enhancements that apply to this case -- a total of a 5-level increase -- are excessive.  While Hernandez-Mejia formally falls within the scope of the enhancements for possessing a dangerous weapon and for being a manager or supervisor, he is on the borderline of the conduct to which those enhancements properly apply.  Because the Guidelines assign the same offense-level increase to conduct that falls squarely within the enhancements' respective scopes, and conduct that just manages to do so, the Guidelines overstate the severity of Hernandez-Mejia's conduct in this case.  The effect of the over-representation is compounded by Hernandez-Mejia's placement near the top of the sentencing table -- at the highest reaches of offense levels, minor increases in offense level translate to substantial increases in total time of

imprisonment, usually several years per each level of increase.

While Hernandez-Mejia was in possession of a loaded handgun and was unable to show that it was clearly improbable that the handgun was connected with his drug-trafficking activities, the Court is not convinced that this possession was dangerous enough to justify the full 2-level enhancement. The gun was found in Hernandez-Mejia's home, and there is no evidence that he ever carried it during any of his numerous drug deals. None of his co-conspirators, including Sergio Delgado, who testified at his trial, stated that Hernandez-Mejia carried a handgun. In other words, Hernandez-Mejia's possession was sufficient to formally meet the criteria of U.S.S.G. § 2D1.1(b)(1), but the Court does not see evidence that the possession posed a genuine threat. The core conduct at which the enhancement is aimed would be, for instance, a drug dealer who has a gun on him or nearby in his car while conducting a deal, even though he never draws or brandishes the weapon. The evidence the Court has about Hernandez-Mejia's possession of a handgun is removed from this core conduct.

Hernandez-Mejia's aggravating-role enhancement also overstates his actual conduct. In Hernandez-Mejia's case, a 3-level enhancement changes a suggested sentence of 168-210 months to a suggested sentence of 235-293 months. That change amounts to a jump of 67-83 months. The evidence does not support Hernandez-Mejia being an organizer or leader, and he is a manager or supervisor only by virtue of exercising some degree of control over a single minor co-conspirator. While Hernandez-Mejia's importance and role in the conspiracy makes him more culpable than many of his co-conspirators, the Court believes that an increase of 3 levels, or 67-83 months, is excessive.

### E.      THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITY.

The sixth factor -- and the final relevant factor in this case -- is the "need to avoid

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Evenhandedness and justice are not synonymous. Justice often suggests and requires that the Court treat one person differently from another.  On the other hand, it is important that the Court explain differences in sentencing, else different sentences for similarly situated defendants will be perceived as unfair.

While the Court's sentence must reflect the seriousness with which Congress and the Commission treat this crime, the Court does not believe that a 235-month sentence is necessary to achieve that goal.  On the other hand, a mandatory minimum sentence is not just, particularly given Hernandez-Mejia's role in this conspiracy.  Next to co-Defendant Joaquin Coroneles, Hernandez-Mejia played the most significant role in this criminal enterprise.

The Court agrees that an adjusted sentence is warranted.  Hernandez-Mejia, while in his late forties, committed a serious offense and is soon to be severely punished for the offense.  It is not necessary for him to serve nearly twenty years in prison.  On the other hand, to sentence Hernandez-Mejia to 121 months would introduce an unwarranted sentencing disparity into this case.  Originally, the Court viewed Coroneles to have been at the top of the organization, and he received 132 months, which is roughly consistent with an offense level of 32 and a criminal history category of I.  The evidence has developed, however, to the point where the Court can no longer be certain of this original inclination.  The Court can also not, though, be sure that Hernandez-Mejia is the most culpable figure.  Coroneles accepted responsibility for his crime.  Hernandez-Mejia has not.  If both Coroneles and Hernandez-Mejia were before the Court on a plea or after trial, the Court would be inclined to sentence Coroneles to the higher sentence, or to sentence Coroneles and Hernandez-Mejia to similar sentences.  On the other hand, acceptance of responsibility should mean something. The Court believes that Hernandez-Mejia should not receive the benefit of acceptance when he

-14-

refuses to admit that he did anything wrong.

The Court believes that Hernandez-Mejia's sentence should be more consistent with an offense level of 35 -- approximately three levels above Coroneles' level of 32 -- given Coroneles' plea, acceptance of responsibility, and sentence.  Because the Court is no longer certain that Coroneles is more culpable than Hernandez-Mejia, the Court believes that no further adjustment would be necessary under this factor.  Another approach would be to assign only 1 offense level for the gun enhancement and only 1-2 levels for the managerial role.  Both approaches suggest a sentence of between 34 and 35.  Accordingly, the Court believes that the most appropriate sentence to avoid disparity in sentencing would be a sentence based on an offense level equivalent to what would be between 34 and 35 under the Sentencing Guidelines.

### F.    THE 3553(a) FACTORS POINT TO A SENTENCE THAT VARIES FROM THE GUIDELINES SENTENCE.

In conclusion, based on the documents and arguments that Hernandez-Mejia has submitted, the Court believes that a variance is warranted.  The Court does not, however, believe that a sentence of 121 months creates a just sentence.  The Court has already decided that Hernandez-Mejia's criminal history is category II and rejected a departure to category I; to sentence consistent with category I is contrary to what the Court has already decided.

The Court will sentence consistent with an offense level of approximately 34 to 35 and a criminal history of II, or a variance that is consistent with a 2- to 3-level variance.  The Court believes that a sentence consistent with what would be, under the Guidelines, an offense level of approximately 34 to 35, adequately reflects the Court's concerns that the enhancements the Court has applied in this case over-represent Hernandez-Mejia's conduct and the fact that many of the factors under § 3553(a)(2) counsel a sentence closer to the mandatory minimum.  Such a sentence

also eliminates any sentencing disparities.  The sentence is still high enough, however, in light of Hernandez-Mejia's important role in a major narcotics conspiracy and provides a just punishment for such a serious crime.  The Court will sentence Hernandez-Mejia to 178 months of incarceration, which the Court concludes adequately reflects the policies embodied in § 3553(a).

**IT IS ORDERED** that the request for a variance from the advisory guidelines sentence in the Defendant's Sentencing Memorandum in Support of Variance is granted in part and denied in part.  The Court will grant Defendant Eduardo Hernandez-Mejia a variance, but not as great a variance as he requests.  The Court will sentence Hernandez-Mejia to 178 months of incarceration.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
   United States Attorney
Larry Gomez
Damon P. Martinez
   Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Edward O. Bustamante
Albuquerque, New Mexico

      *Attorney for the Defendant*