IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                        No. CR 05-0469 JB

EDUARDO HERNANDEZ-MEJIA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States Court of Appeals for the Tenth Circuit's Order and Judgment, filed January 7, 2011 (Doc. 538-1); (ii) the Court's Notice of Hearing, filed February 23, 2011 (Doc. 540); (iii) the United States' Motion for the District Court to Dismiss without Prejudice the Superseding Indictment, filed October 12, 2005 (Doc. 541); and (iv) the Defendant's Response to Government's Motion for the District Court to Dismiss Without Prejudice the Superceding Indictment and Defendant's Motion to Dismiss the Indictment with Prejudice, filed March 20, 2011 (Doc. 542).  The Court held a hearing on March 22, 2011.  The primary issue is whether the Court should dismiss the Superseding Indictment as to Defendant Eduardo Hernandez-Mejia filed on October 12, 2005 (Doc. 153), with or without prejudice. Because the circumstances surrounding the delay in Hernandez-Mejia's case were not egregious, the Court dismisses the Superseding Indictment without prejudice.

## FACTUAL BACKGROUND

Hernandez-Mejia came to the United States in 1977 and gained permanent resident status in 1988.  Hernandez-Mejia's federal offenses in this case all stem from his participation in a drug-trafficking ring based out of Los Lunas, New Mexico.  The organization was exposed principally

because of an extensive wiretap investigation that the Drug Enforcement Administration conducted. Hernandez-Mejia played a major role in the conspiracy, selling narcotics to numerous co-conspirators and wiring money to suppliers in Mexico.  The record before the Court, however, does not show that Hernandez-Mejia was involved in dictating the activities of the organization, or in telling his buyers to whom to sell and for how much to sell the drugs.  He seems to have been a wholesale supplier of heroin and cocaine to various other drug dealers who were loosely associated with him because he was their principal supplier.  Many features about the conspiracy, and particularly about its decision-making structure, remain unclear.  It is not clear, for example, whether Hernandez-Mejia exercised much control over those to whom he sold drugs.  Many of the drug transactions described at trial and in the Presentence Investigation Report ("PSR") involve various people calling up Hernandez-Mejia to buy drugs.

Hernandez-Mejia's conduct generally seemed reactive rather than proactive.  The evidence does not show extensive planning or control over others; it does not show what cut of the profits Hernandez-Mejia took.  While arguably he recruited Defendant Sergio Delgado, another co-conspirator, Randy Corral, brought Delgado to Hernandez-Mejia, and there is no indication that Hernandez-Mejia recruited anyone else to the conspiracy.  Neither the evidence at trial nor the information in the PSR explains how Hernandez-Mejia received heroin from his suppliers in Mexico.  It is possible that the suppliers arranged for the transportation of heroin across the border and that Hernandez-Mejia only received the heroin.  There is nothing indicating he had an organizational role in any smuggling.

While Hernandez-Mejia was the main figure in sending money to Mexico to pay for the heroin being smuggled into the United States, it is not clear how much of an organizational role he played in this aspect of the conspiracy.  The evidence points to Hernandez-Mejia principally acting

alone to wire money back to Mexico for the drugs he was buying, rather than coordinating the activities of others or arranging financial transactions on behalf of others.

Hernandez-Mejia never used violence in carrying out his activities, and despite being an important member of the conspiracy, there is no evidence about how much of the profit that the conspiracy's endeavors generated ended up in his hands, although he does not appear to have led an extravagant lifestyle.   In sum, the record before the Court establishes the importance of Hernandez-Mejia's place in the drug-trafficking conspiracy, but does not show that he played an important leadership role.   He may well have.   Even with an extensive investigation, it can be difficult for law enforcement to develop a full picture of the inner workings of any secretive criminal enterprise.   The Court cannot, however, base its sentencing decisions on conjecture or hints in the evidence.   The evidence the Court has establishes only that Hernandez-Mejia was an important figure in a major drug ring, but does not reveal that he played a significant organizational or leadership role in it.

## PROCEDURAL BACKGROUND

On October 12, 2005, a federal grand jury returned a ten-count Superseding Indictment charging Hernandez-Mejia with conspiring to distribute heroin and cocaine, distributing cocaine, attempting to evade currency-reporting requirements, running an unlicensed money-transmitting operation, and using a telephone to facilitate the drug-distribution conspiracy.   See Superseding Indictment, filed October 12, 2005 (Doc. 153)   Counts 2 and 3 of the Superseding Indictment -- attempting to evade currency-reporting requirements and running an unlicensed money-transmitting operation -- were dismissed before trial on Plaintiff United States of America's motion.   See Order, entered March 28, 2008 (Doc. 415).

The United States filed a motion to designate the case as a complex case and order a non-

standard discovery order on March 29, 2005.  See Government's Motion for Status Conference for

the Purposes of Designating this a Complex Case, and Issuing a Non-Standard Discovery Order,

filed March 29, 2005 (Doc. 75).  None of the Defendants or their counsel opposed declaring the case

complex, and indeed at the hearing on April 19, 2005, all Defendants -- including Hernandez-Mejia

-- indicated that they did not object to such a designation.  See Transcript of Hearing at 5:16-6:8

(taken April 19, 2005)(Court, Robbenhaar, and Rosenstein)("Tr.").[1]  Keith Romero, Hernandez-

Mejia's attorney at the time of the hearing, did not respond to the Court's question whether anyone

opposed the motion, indicating that he did not oppose the Court designating the case as complex and

issuing a non-standard discovery order.  See Tr. at 5:16-6:10 (Court, Robbenhaar, and Rosenstein).

On May 23, 2005, the Court granted the United States' motion to designate the case as complex and,

after meeting with all counsel and their clients, who indicated there was no objection, issued a non-

standard discovery order, scheduling the trial for January 23, 2006.  See Order at 1-2, filed May 23,

2005 (Doc. 99)("The Court having considered the United States' Motion, the Defendants having no

objection to the motion, and the Court having heard from counsel . . . , finds that the United States'

request to designate this matter a complex case and for a non-standard discovery order is well taken

and will be granted.").

     Hernandez-Mejia asked the Court to dismiss two of his prior appointed attorneys.  See

Motion to Allow Withdrawal of Counsel and to Appoint New CJA Counsel, filed August 8, 2005

(Doc. 119); Motion to Withdraw Attorney, filed August 24, 2005 (Doc. 130).  Hernandez-Mejia

contended that they tried to induce him to enter a guilty plea against his will. See Defendant's

Motion at 2.  In December 2006, the Court appointed Edward O. Bustamante as Hernandez-Mejia's

---

[1] The Court's citations to the transcripts of the hearings refer to the Court Reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

counsel.  See CJA Form 20, filed December 12, 2006 (Doc. 347).

After being appointed as Hernandez-Mejia's third counsel, Mr. Bustamante filed three motions for continuance on February 19, April 11, and May 14, 2007.[2]  See First Joint Unopposed Motion to Continue Trial, filed February 19, 2007 (Doc. 360); Second Joint Unopposed Motion to Continue Trial, filed April 11, 2007 (Doc. 365); Third Joint Unopposed Motion to Continue Trial, filed May 14, 2007 (Doc. 372).  In each of the three motions, Mr. Bustamante stated that "[t]he investigation in this matter includes volumes of discovery and numerous captured conversations by use of wiretap.  Defense counsel is requesting further time to fully familiarize himself with all aspects the case and to discuss this matter with Mr. Hernandez-Mejia."  First Joint Unopposed Motion to Continue Trial ¶ 2, at 1-2; Second Joint Unopposed Motion to Continue Trial ¶ 2, at 2; Third Joint Unopposed Motion to Continue Trial ¶ 2, at 1-2.  The Court granted each of the motions. See First Joint Unopposed Order Continuing Trial Setting, filed March 9, 2007 (Doc. 362); Second Joint Unopposed Order Continuing Trial Setting, filed April 16, 2007 (Doc. 366); Third Joint

_____

[2] In addition to those the Court details, Hernandez-Mejia moved for continuance, moved to vacate his trial, and did not oppose motions by the United States for continuances on numerous occasions.  See, e.g., Joint Unopposed Motion to Continue the 1/23/06 Trial Setting by Eduardo Hernandez-Mejia, Jose Michael Montoya, Ramon Anaya, filed January 3, 2006 (Doc. 227); Motion to Continue Trial Set on 3/13/06 by Eduardo Hernandez-Mejia, Jose Michael Montoya, Ramon Anaya & Sergio Delgado, filed February 17, 2006 (Doc. 258); Motion to Vacate the 5/8/06 Trial Setting by Eduardo Hernandez-Mejia, Jose Michael Montoya, Ramon Anaya, Sergio Delgado, filed March 29, 2006 (Doc. 270); Joint Motion to Continue the 6/26/06 Trial Setting by Eduardo Hernandez-Mejia, Jose Michael Montoya, Ramon Anaya, filed April 26, 2006 (Doc. 278); Joint Motion to Vacate the 8/6/06 Trial Setting by Eduardo Hernandez-Mejia, Jose Michael Montoya, Ramon Anaya, filed June 2, 2006 (Doc. 289); Joint Motion to Vacate the September 2006 Trial Setting by Eduardo Hernandez-Mejia, Jose Michael Montoya, Ramon Anaya, filed August 25, 2006 (Doc. 307); Joint Unopposed Motion to Continue Trial and Request for Dates Certain by Eduardo Hernandez-Mejia, Jose Michael Montoya, Ramon Anaya, filed September 20, 2006 (Doc. 313); Unopposed Motion to Continue Trial by Eduardo Hernandez-Mejia, filed January 3, 2007 (Doc. 349).  Accordingly, Hernandez-Mejia's case was continued on numerous occasions.  See, e.g., Order for Continuance at 1, filed March 31, 2006 (Doc. 271); Order for Continuance at 1, filed August 28, 2006 (Doc. 309).

Unopposed Order Continuing Trial Setting, filed May 14, 2007 (Doc. 373).

On June 11, 2007, the United States filed its Unopposed Motion to Continue Trial Scheduled to Begin on July 16, 2007. See Doc. 375. In the motion, United States Attorney Damon P. Martinez represented that he was a member of the United States Army Reserves, and that he had received orders for active training from July 8, 2007, to July 21, 2007. See United States' Unopposed Motion to Continue Trial Scheduled to Begin on July 16, 2007 ¶ 2, at 1. The United States estimated that the trial would take eight business days, and asked that Court to "set this matter for a definite trial setting on the September trial docket." United States' Unopposed Motion to Continue Trial Scheduled to Begin on July 16, 2007 ¶ 3, at 1, 2. The Court granted the motion, ordering that "the trial scheduled for July 16, 2007 is vacated and is rescheduled with a definite trial setting of September 17, 2007 at 9:00 a.m." Unopposed Order Continuing Trial at 1, filed June 13, 2007 (Doc. 377).

Hernandez-Mejia exercised his right to trial and was tried before a jury on the eight remaining counts in the Superseding Indictment. After a four-day trial, the jury found Hernandez-Mejia guilty on all the counts submitted to the jury, save for Count Seven, which the Court instructed the jury not to address. See Verdict, entered April 10, 2008 (Doc. 450); Order and Judgment at 14 (Doc. 538-1). On December 1, 2008, the Court sentenced Hernandez-Mejia to 178 months in the custody of the Bureau of Prisons. See Memorandum Opinion and Order, filed January 12, 2009 (Doc. 516). Hernandez-Mejia's sentence included a downward variance. See Memorandum Opinion and Order at 15-16.

Hernandez-Mejia filed a pro-se motion to dismiss the Superseding Indictment, which was submitted to the district court in February 2008. See Letter from Hernandez-Mejia to Clerk of the Court (dated January 25, 2008), filed February 1, 2008 (Doc. 408). Hernandez-Mejia contended that

his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, was violated.  On April 8, 2008, the Court issued a Memorandum Opinion and Order denying Hernandez-Mejia's motion to dismiss.  See Doc. 436. Hernandez-Mejia appealed the Court's decision.  See Notice of Appeal, filed July 7, 2009 (Doc. 508).  On February 2, 2011, the Tenth Circuit issued an Order and Judgment.  See Doc. 538-1.  The Tenth Circuit reversed the Court's denial of Hernandez-Mejia's motion to dismiss, and remanded this action to the Court to determine, in accordance with 18 U.S.C. § 3162(a)(2), whether the dismissal of the Superseding Indictment filed in October 2005 should be with or without prejudice.  See Order and Judgment at 2.

## LAW REGARDING THE SPEEDY TRIAL ACT

"'The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings.'"  United States v. Saltzman, 984 F.2d 1087, 1090 (10th Cir. 1993)(quoting United States v. Noone, 913 F.2d 20, 28 (1st Cir. 1990)).  The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), reads in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.  If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1).

The Speedy Trial Act requires "that an accused person's trial must begin within seventy days of his indictment or initial appearance, whichever is later."  United States v. Cano-Silva, 402 F.3d 1031, 1034 (10th Cir. 2006)(citing 18 U.S.C. § 3161(c)(1)).  The Speedy Trial Act provides that certain periods of delay are not calculated in computing the time limits for trial.  18 U.S.C. § 3161

-7-

states in relevant part:

> The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--
>
>> (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
>>
>> . . . .
>>
>> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>>
>> . . . .
>>
>> (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
>>
>> . . . .
>
> (4) Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.
>
> . . . .
>
> (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161.  Courts are instructed to consider specific factors when determining whether to

grant a continuance under section (A) of 18 U.S.C. § 3161(8).  <u>See</u> 18 U.S.C. § 3161(B).  18 U.S.C.

§ 3161(B) sets forth the factors a court should consider:

> (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:
>
>> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>>
>> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>>
>> (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.
>>
>> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(B).

The Supreme Court of the United States in United States v. Zedner, 547 U.S. 489 (2006), held that, when a district court makes no findings on the record to support a § 3161(h)(8) continuance, harmless-error review is not appropriate.  See 547 U.S. at 506-07. In United States v. Williams, 511 F.3d 1044 (10th Cir. 2007), the Tenth Circuit held that "the Act does not allow a district court to retroactively grant an ends-of-justice continuance.  'Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period.'"  Id. at 1055

(quoting United States v. Doran 882 F.2d 1511, 1516 (10th Cir. 1989)).

Section 3162(a)(1) and (2) of the Act sets out the sanctions applicable when the United States has not filed an indictment or information, or when the defendant is not brought to trial within the time limits that § 3161(b) and (c) require:

> **(a)(1)** If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.  In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.
>
> **(2)** If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h) (3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

18 U.S.C. § 3162(a)(1), (2).

In United States v. Cano-Silva, the Tenth Circuit stated: "The fact that a violation has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice, which should be reserved for more egregious violations.  Dismissal with prejudice is a strong message indeed, and one ill-suited to an isolated and inadvertent violation."  402 F.3d at 1035.

> While dismissal of the indictment is mandatory, the district court retains discretion to determine whether the indictment is dismissed with or without prejudice. In

determining whether to dismiss with or without prejudice, the court "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

Id. at 1034 (quoting 18 U.S.C. § 3162(a)(2))(citations omitted). The seriousness of the offense must be weighed against the severity of the delay. See United States v. Jones, 213 F.3d 1253, 1257 (10th Cir. 2000). In addition, the Supreme Court has suggested that the trial court should also consider, when determining whether to dismiss an indictment with prejudice, the prejudice to the defendant that a Speedy Trial violation delay has caused. See United States v. Taylor, 487 U.S. 326, 333-34 (1988).

"It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." United States v. Taylor, 487 U.S. at 342. "Preindictment delay that rises to a constitutional violation requires dismissal of the indictment with prejudice to retrial." United States v. Johnson, 120 F.3d 1107, 1110 n.2 (10th Cir. 1997)(citing United States v. Marion, 404 U.S. 307, 324 (1971)). "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." United States v. Saltzman, 984 F.2d at 1093. See United States v. Johnson, 120 F.3d at 1112 ("Ms. Johnson bears no responsibility for the circumstances leading to the Speedy Trial Act violation, and . . . she properly asserted her rights under the Act."). In United States v. Johnson, one aspect of the Speedy Trial Act violations that troubled the Tenth Circuit was that, although the nature of the offense was relatively uncomplicated, the government delayed almost two years in indicting her. See 120 F.3d at 1112.

In United States v. Perez-Alcatan, 376 F. Supp. 2d 1253 (D.N.M. 2005)(Browning, J.), the

Court dismissed Perez-Alcatan's indictment without prejudice because the United States, through inadvertent error, failed to indict him within thirty days of the arrest, as the Speedy Trial Act requires.  See 376 F. Supp. 2d at 1257.  Thirty days from Perez-Alcatan's arrest was May 26, 2005. See id. at 1254. A grand jury indicted Perez-Alcatan on June 14, 2005.  See id.

Perez-Alcatan argued that the Court should dismiss his case with prejudice.  See id. at 1256. He contended that his charged crime, re-entry into the United States after conviction for an aggravated felony, which carried a 16-level enhancement under the United States Sentencing Guidelines, was not a serious crime.  See 376 F. Supp. 2d at 1257.  His underlying aggravated felony, however, was voluntary manslaughter.  See id. at 1254.

The Court in United States v. Perez-Alcatan looked to the Sentencing Guidelines, stating that a 16-level enhancement is among the largest in the Sentencing Guidelines, which signals Congress' intent to consider the crime a serious one.  See 376 F. Supp. 2d at 1256.  Furthermore, the Court stated that the seriousness of the crime is indicated by the Guideline's lack of authorization for probation in such circumstances, and by the fact that Congress is hiring more border agents and Assistant United States Attorneys to slow the flow of immigration and punish those who are already felons.  See 376 F. Supp. 2d at 1256.  The Court concluded that the seriousness of the offense favored dismissal without prejudice.  See id.

The Court in United States v. Perez-Alcatan also held that the facts and circumstances that led to the delay did not favor dismissal with prejudice.  See 376 F. Supp. 2d at 1256-57.  While most immigration cases in which a defendant waives a preliminary hearing and detention hearing also involve a waiver of presentment to the grand jury, Perez-Alcatan chose to waive the detention hearing and the preliminary hearing, but not presentment to the grand jury.  See 376 F. Supp. 2d at 1256.  As a result of the unique situation, the file cover in the United States Attorney's Office was

-12-

annotated "waiver" and was incorrectly filed, causing untimely presentment.  See 376 F. Supp. 2d at 1257.

The Court in United States v. Perez-Alcatan held that, because the delay-producing conduct was an administrative oversight, and was without bad faith, dismissing the case with prejudice would do little to prevent such future mistakes.  See 376 F. Supp. 2d at 1257.  Furthermore, the Court stated that, the "United States continues to present its cases for indictment in a timely manner; dismissal with prejudice would not improve the professional efforts already in place in adhering to the Speedy Trial Act."  376 F. Supp. 2d at 1257.  The Court also stated that Perez-Alcatan had not alleged any actual prejudice in his ability to defend himself.  See id.  The Court, therefore, dismissed the case without prejudice.  See id.

## ANALYSIS

The Tenth Circuit has remanded this case for the Court to dismiss the Superseding Indictment.  The question before the Court is whether it should dismiss the Superseding Indictment with or without prejudice.  The United States contends that dismissal with prejudice is appropriate only for egregious violations of a defendant's Speedy Trial Act rights and that the circumstances surrounding the delay in Hernandez-Mejia's case are not egregious.  Accordingly, the United States argues that the Court should dismiss the Superseding Indictment without prejudice.  Hernandez-Mejia responds that the length of the delay combined with the failure of the Court, the United States, and Hernandez-Mejia's Counsel to recognize the violations of Hernandez-Mejia's Speedy Trial Act rights makes this case egregious, and asserts that the Court should dismiss the Superseding Indictment case with prejudice.

"[A]n indictment must be dismissed if the Speedy Trial Act is violated, but this dismissal may be with or without prejudice."  United States v. Larson, 627 F.3d 1198, 1212 (10th Cir.

2010)(citing 18 U.S.C. § 3162(a)(2); United States v. Williams, 511 F.3d at 1049). A "violation of the speedy trial requirement, by itself, is not a sufficient basis for dismissal with prejudice." United States v. Williams, 511 F.3d at 1060 (quoting United States v. Abdush-Shakur, 465 F.3d 458, 462 (10th Cir. 2006))(internal quotation marks omitted). "Dismissals with prejudice 'should be reserved for more egregious violations' of the Speedy Trial Act." United States v. Larson, 627 F.3d at 1212 (quoting United States v. Abdush-Shakur, 465 F.3d at 462).

> Section 3162(a)(2) of title 18 provides:
>
> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice.

18 U.S.C. § 3162(a)(2). Under Tenth Circuit precedent, courts also considers the prejudice to the defendant. United States v. Larson, 627 F.3d at 1211; United States v. Abdush-Shakur, 465 F.3d at 462 ("Prejudice to the defendant is among the 'other' factors the text of § 3162 directs the district court to consider." (citing United States v. Taylor, 487 U.S. at 334)). "[T]he district court retains broad discretion whether to dismiss the indictment with or without prejudice." United States v. Abdush-Shakur, 465 F.3d at 462 (citing United States v. Doran, 882 F.2d at 1518 (10th Cir. 1989)). On balance, these factors counsel in favor of dismissing the Superseding Indictment without prejudice, because the violation of Hernandez-Mejia's Speedy Trial Act rights was not egregious. See United States v. Larson, 627 F.3d at 1212.

## I.   HERNANDEZ-MEJIA IS CHARGED WITH A SERIOUS OFFENSE.

The United States contends that Hernandez-Mejia is charged with a serious offense in the Superseding Indictment. Hernandez-Mejia notes that, although the Court deemed this case "complex," the United States' presented no allegation in the Superseding Indictment or evidence

in the first prosecution of murder, violence, intimidation of witnesses, or the use of firearms in the alleged trafficking.  Hernandez-Mejia further notes that, while the United States sought to portray and prove he was the "kingpin" of the alleged trafficking, the Court determined him to be no more culpable than other actors in the conspiracy.  Response at 2.  Hernandez-Mejia contends these considerations demonstrate that his is not a serious offense.  Hernandez-Mejia also asserts that the United States' "breakdown the specifics of the seriousness of the case" must be considered in light of its "acquiescence to the significant delay in bringing this matter to trial by its immediate concurrence to undersigned counsel's requests for continuance."  Response at 2.

The Court agrees that Hernandez-Mejia is charged with a serious offense.  In Count 1 of the Superseding Indictment, Hernandez-Mejia is charged with partaking in a conspiracy to possess with the intent to distribute one kilogram and more of a mixture and substance containing a detectable amount of heroin and less than 500 grams of a mixture and substance containing a detectable amount of cocaine, contrary to 21 U.S.C. § 841(a)(1) and §841(b)(1)(A) and (C).  See Superseding Indictment at 2.  Congress has created a rebuttable presumption for the purposes of pretrial detention that the individuals alleged to have committed the crime with which Hernandez-Mejia is charged in Count 1 are a threat to the "safety of the community."  18 U.S.C. §3142(e)(3).  Moreover, Congress has created a mandatory minimum ten year sentence for anyone convicted of an "A" level drug offense.  18 U.S.C. § 841(b)(1)(A).  The seriousness of Hernandez-Mejia's crime weighs in favor of the Court dismissing the Superseding Indictment without prejudice.  Cf. United States v. Perez-Alcatan, 376 F. Supp. 2d at 1256 (finding that a 16-level enhancement in the Sentencing Guidelines signals Congress' intent to consider the crime a serious one, supporting dismissing without prejudice).

Moreover, a jury convicted Hernandez-Mejia of conspiring to distribute heroine and cocaine,

distributing cocaine, and using a telephone to facilitate drug trafficking offenses.  <u>See</u> Verdict, filed April 10, 2008 (Doc. 450).  On December 1, 2008, the Court sentenced Hernandez-Mejia 178 months in the custody of the Bureau of Prisons.  <u>See</u> Memorandum Opinion and Order at 16. Hernandez-Mejia's sentence included a downward variance.  <u>See</u> Memorandum Opinion and Order at 15-16.  The significant sentence that the Court imposed demonstrates the seriousness of Hernandez-Mejia's offense in the eyes of Congress -- the politically elected branch -- and of the United States Sentencing Commission.  Because Hernandez-Mejia is charged with a serious crime, the Court concludes that this factor supports dismissing the Superseding Indictment without prejudice.

## II.      THE   FACTS   AND   CIRCUMSTANCES   OF   THE   VIOLATION   OF HERNANDEZ-MEJIA'S SPEEDY TRIAL ACT RIGHTS ARE NOT EGREGIOUS.

The United States contends that the facts and circumstances of the delay in this case are not egregious and therefore do not support dismissing the Superseding Indictment with prejudice. Hernandez-Mejia responds that, while his counsel, Mr. Bustamante, filed three motions for continuance, Hernandez-Mejia was without fault for the delay.  Because the parties were working diligently to bring this case to trial, and the violation of Hernandez-Mejia's Speedy Trial Act rights was a lack of specificity in the motions to continue, the Court finds that the facts and circumstances surrounding the delay were not egregious.

The Tenth Circuit's decision remanding this case to the Court focused on four motions to continue based on ends-of-justice reasons and their accompanying orders.  <u>See</u> Order and Judgment at 14.  Hernandez-Mejia's counsel submitted three of the four motions.  In analyzing these three defense filings, the Tenth Circuit stated that the

> orders entered on March 9, April 16, and May 14, 2007, did not set forth any specific, nonconclusory, reasons why further continuances were necessary.  The

underlying motions Mr. Bustamante filed on February 19, April 11, and May 14, likewise merely contained short, boilerplate statements that were conclusory and unsupported by any specific details.

Order and Judgment at 15. In each of the three underlying motions that Mr. Bustamante filed, he stated that "[t]he investigation in this matter includes volumes of discovery and numerous captured conversations by use of wiretap. Defense counsel is requesting further time to fully familiarize himself with all aspects the case and to discuss this matter with Mr. Hernandez-Mejia." First Joint Unopposed Motion to Continue Trial ¶ 2, at 1-2; Second Joint Unopposed Motion to Continue Trial ¶ 2, at 2; Third Joint Unopposed Motion to Continue Trial ¶ 2, at 1-2. The Court issued orders granting each of these motions, stating in each:

> The Court, having reviewed the motion and noting that Assistant U.S. Attorney, Damon Martinez does not oppose the motion, finds that the motion is well taken and will be granted. The Court specifically finds, pursuant to 18 U.S.C. § 3161(h)(8)(A), that the ends of justice are served granting the continuance, and this outweighs the best interest of the public and the defendant in a speedy trial. The Court further finds, pursuant to 18 U.S.C. § 3161(h)(8)(B), that good grounds exist for the continuance as Defendant Hernandez-Mejia needs additional time in which to investigate and prepare this case for trial.

First Joint Unopposed Order Continuing Trial Setting at 1; Second Joint Unopposed Order Continuing Trial Setting at 1; Third Joint Unopposed Order Continuing Trial Setting at 1.

The Tenth Circuit concluded that Mr. Bustamante's reasons for his requests and the Court's orders were "boilerplate statements" which the Tenth Circuit held do "not set forth any specific, nonconclusory, reasons." Order and Judgment at 15. The Tenth Circuit did not suggest that Mr. Bustamante's motions or the Court's orders were based on "any deliberate attempt by the government to manipulate the proceedings or any pattern of dilatory conduct or neglect." United States v. Cano-Silva, 402 F.3d 1031, 1036 (10th Cir. 2005).

The United States submitted the fourth motion and order the Tenth Circuit addressed. In the

motion, Mr. Martinez represented that he was a member of the United States Army Reserves and that he had received orders for active training from July 8, 2007, to July 21, 2007.  See United States' Unopposed Motion to Continue Trial Scheduled to Begin on July 16, 2007 ¶ 2, at 1.  The United States, estimated that the trial would take eight business days, and asked that Court to "set this matter for a definite trial setting on the September trial docket."  United States' Unopposed Motion to Continue Trial Scheduled to Begin on July 16, 2007 ¶ 3, at 1, 2.  The Court granted the motion, ordering that "the trial scheduled for July 16, 2007 is vacated and is rescheduled with a definite trial setting of September 17, 2007 at 9:00 a.m."  Unopposed Order Continuing Trial at 1.  The Tenth Circuit stated that "the government's motion for continuance filed on June 11 had informed the district court only that the prosecutor was unavailable for trial from July 8 to July 21, and neither the district court nor the government offered any explanation why the trial needed to be postponed until September."  Order and Judgment at 15.  In essence, it appears that the Tenth Circuit is stating that the United States and the Court needed to justify why a trial date was not scheduled between July 22, 2007, and September 17, 2007.[3]  The Tenth Circuit again did not base its decision on any egregious act by the parties or by the Court: "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy."  United States v. Saltzman, 984 F.2d at 1093.

---

[3] Although the Court is unable to recreate at this date what scheduling conflicts led it to reschedule the trial in September, during the period between July 22, 2007, and September 17, 2007, the Court held sixty-three hearings -- including eight hearings in Las Cruces -- and the Court was likely unable to find an earlier eight day block of time in which to schedule the trial.  The Court recognizes that "congestion of the court's calendar" does not toll the Speedy Trial Act clock, 18 U.S.C.A. § 3161(h)(7)(C), but delay in bringing Hernandez-Mejia to trial resulted in part from the scheduling restraints the Court and the parties faced, which demonstrates that the violation of Hernandez-Mejia's Speedy Trial Act rights was not egregious, and did not result from "intentional dilatory conduct, or a pattern of neglect on the part of the" parties or the Court.  United States v. Saltzman, 984 F.2d at 1093.

-18-

In sum, the defense counsel, the United States, and the Court were unaware that the lack of specificity in the motions and orders was producing a violation of the Speedy Trial Act.[4]  Both parties were cooperating, and they were trying to get the case to trial as quickly as possible with new counsel involved.  Consequently, the facts identified by the Tenth Circuit considered together with the circumstances of the proceedings demonstrate that the circumstances of Hernandez-Mejia's Speedy Trial Act rights violation were not egregious and do not warrant dismissing the Superseding Indictment with prejudice.

## III.    DISMISSING THE SUPERSEDING INDICTMENT WITHOUT PREJUDICE COMPLIES WITH THE SPEEDY TRIAL ACT AND ON THE ADMINISTRATION OF JUSTICE.

The United States asserts that reprosecuting Hernandez-Mejia complies with the Speedy Trial Act and the administration of justice.  Hernandez-Mejia responds that the significant delay in bringing him to trial combined with the failure of the defense counsel, the United States, and the Court to recognize the violation of Hernandez-Mejia's Speedy Trial Act rights has produced a violation of his rights, and he has no guarantee that his rights will not be violated again if he is reprosecuted.  Hernandez-Mejia also asserts that the "interests of the public have not, and now cannot, be served given the significant expenditure of taxpayer resources to this point and the guaranteed expenditure of perhaps tens of thousands of additional public funds to secure a conviction upon retrial."  Response at 5.

The Court concludes that dismissing the Superseding Indictment without prejudice will serve the "administration of [the Speedy Trial Act] and on the administration of justice."  18 U.S.C.

---

[4] The Tenth Circuit's opinion in <u>United States v. Toombs</u>, 574 F.3d 1262 (10th Cir. 2009), on which the Tenth Circuit extensively relied in its Judgment and Order, was decided on August 03, 2009, after the violations in this case.

§ 3162(a)(2).  The Speedy Trial Act is "designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in bringing prompt criminal proceedings."  United States v. Apperson, 441 F.3d 1162, 1177-78 (10th Cir. 2006).  In Zedner v. United States, 547 U.S. 489 (2006), the Supreme Court stated:

> This scheme is designed to promote compliance with the Act without needlessly subverting important criminal prosecutions.  The more severe sanction (dismissal with prejudice) is available for use where appropriate, and the knowledge that a violation could potentially result in the imposition of this sanction gives the prosecution a powerful incentive to be careful about compliance.  The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws -- though even this sanction imposes some costs on the prosecution and the court, which further encourages compliance.

547 U.S. at 499.

Precluding Hernandez-Mejia's reprosecution is inconsistent with the administration of justice.  A jury found him guilty of conspiring to distribute heroine and cocaine, distributing cocaine, and using a telephone to facilitate drug trafficking offenses.  See Verdict, at 1.  The Court sentenced Hernandez-Mejia to 178 months in the custody of the Bureau of Prisons, which included a downward variance.  See Memorandum Opinion and Order at 15-16.  Barring Hernandez-Mejia's reprosecution after he has been in custody approximately six years, less than half of the sentence the Court imposed for the crime of which a jury found he was guilty beyond a reasonable doubt -- a finding that the violation of Hernandez-Mejia's Speedy Trial Act rights does not impeach -- is not consistent with the administration of justice.

Contrary to Hernandez-Mejia's contention, dismissing the Superseding Indictment with prejudice would not serve the public interest.  "[T]he Act was designed not just to benefit defendants but also to serve the public interest by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the

deterrent effect of punishment." Zedner v. United States, 547 U.S. at 501.  Barring reprosecution of Hernandez-Mejia will not rehabilitate whatever enervating effect the delay in bringing Hernandez-Mejia to trial has had, and will not reduce Hernandez-Mejia's opportunity to commit crimes; reprosecuting Hernandez-Mejia, on the other hand, will provide a deterrent and, if Hernandez-Mejia is detained pending retrial or convicted, reduce Hernandez-Mejia's opportunities to commit crimes.

Moreover, reprosecuting Hernandez-Mejia will salvage some of the resources that the parties and the Court have expended in prosecuting him.  Additionally, reprosecuting Hernandez-Mejia imposes a cost on the parties and the Court, because they have to once again expend limited resources on a second trial, and divert attention from other priorities; this inefficiency is sufficient deterrent to prevent the mistake again.  The Court increased the detail of its documentation for the reasons for granting motions to continue after United States v. Toombs came down, which was in the middle of this case and after the violations of Hernandez-Mejia's Speedy Trial Act rights.  The Tenth Circuit's opinion in this case has heightened the bar's and the Court's vigilance in explaining in great detail the reasons for continuing a trial and for the need to continue a trial for a particular period.  This increased burden is consistent with the Speedy Trial Act's scheme, which is designed to "imposes some costs on the prosecution and the court, which further encourages compliance," even in less egregious cases of Speedy Trial Act violations.  547 U.S. at 499.  The Court therefore finds that this prong supports dismissing the Superseding Indictment without prejudice.

## IV.   REPROSECUTION WOULD NOT PREJUDICE HERNANDEZ-MEJIA.

"Prejudice to the defendant is among the 'other' factors the text of § 3162 directs the district court to consider."  United States v. Abdush-Shakur, 465 F.3d at 462 (citing United States v. Taylor, 487 U.S. at 334).  "Impairment of the defense is the most important of these interests, and

prevention of oppressive pretrial incarceration is the second most important."   United States v. Larson, 627 F.3d at 1209 (citations omitted).

      Hernandez-Mejia asserts:

> The delay already seen and the dismissal of the superseding indictment without prejudice will be prejudicial to Mr. Hernandez-Mejia.  Allowing the Government to pursue a new trial means additional, unspecified, potentially lengthy continued federal prison detention, added to the already six years of confinement.  The Government's Motion provides no information whatsoever regarding its preparedness for a second trial and how quickly will be to move forward with that trial. [sic]

Response at 6.  Hernandez-Mejia offers only speculation.  "Showing a mere possibility of prejudice is insufficient."   United States v. Larson, 627 F.3d at 1209 (citations omitted).  The possibility of delay is always present and is insufficient alone to warrant dismissal with prejudice, otherwise courts would always dismiss with prejudice.  Moreover, again, the parties and the Court violated Hernandez-Mejia's Speedy Trial Act rights because the parties unwitting failed to provide adequate specificity in their motions, and the Court failed to provide the necessary particularity in its orders.  Now that the Tenth Circuit had made the parties and the Court acutely cognizant of their obligations, they will be on guard not to violate Hernandez-Mejia's Speedy Trial Act rights again during his reprosecution; the Court does not need to dismiss the Superseding Indictment with prejudice for it and the bar to get the Tenth Circuit's message.

      In sum, this case does not present an egregious Speedy Trial Act violation.  The violation of Hernandez-Mejia's rights was a lack of specificity in the parties' continuance motions and the Court's orders granting the motions.  The parties and the Court worked cooperatively and diligently to bring this complex case to trial as Hernandez-Mejia cycled through counsel.  A "violation of the speedy trial requirement, by itself, is not a sufficient basis for dismissal with prejudice."   United States v. Williams, 511 F.3d at 1060 (quoting United States v. Abdush-Shakur, 465 F.3d at

462)(internal quotation marks omitted).  "Dismissals with prejudice 'should be reserved for more egregious violations' of the Speedy Trial Act."  United States v. Larson, 627 F.3d at 1212 (quoting United States v. Abdush-Shakur, 465 F.3d at 462).  Because this is not an egregious case, the Court dismisses the Superseding Indictment without prejudice.

IT IS ORDERED that: (i) the United States' Motion for the District Court to Dismiss without Prejudice the Superseding Indictment, filed October 12, 2005 (Doc. 541), is granted; and (ii) the Defendant's Motion to Dismiss the Indictment with Prejudice, filed March 20, 2011 (Doc. 542), is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Kenneth J. Gonzales
    United States Attorney
Larry Gomez
Damon P. Martinez
    Assistant United States Attorneys
Albuquerque, New Mexico

        Attorneys for the Plaintiff

Edward O. Bustamante
Albuquerque, New Mexico

        Attorney for the Defendant